331 A.2d 658

**COMMONWEALTH of Pennsylvania**

**v.**

**Norris JONES, Appellant.**

Supreme Court of Pennsylvania.

Submitted Sept. 30, 1974.

Decided Jan. 27, 1975.

---

Andrew J. Conner, Dunn & Conner, Erie, for appellant.

R. Gordon Kennedy, Dist. Atty., Frank L. Kroto, Jr., Asst. Dist. Atty., Robert H. Chase, Dist. Atty., Erie, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

Appellant, Norris Jones, was tried by a judge and jury and found guilty of murder in the second degree. Post-trial motions were denied and appellant was sen-

tenced to a term of 5 to 12 years in a state correctional institution. This appeal followed.

Appellant's conviction arose out of the fatal stabbing of Dennis Stancko on October 8, 1971, in Erie, Pennsylvania.

Appellant first argues that his oral statement given to police officers, while he was being transported to police headquarters, was inadmissible because he was not given his *Miranda* warnings. We do not agree. The record reveals that when appellant was initially picked up by the police officers he was placed in the police vehicle and given his *Miranda* warnings. He was then asked if he had any weapons on his person, and he produced a knife, which he gave to the police officers, and stated that "it was the knife he used". Under these facts, we find appellant's statement to be admissible. See *Commonwealth v. Powell*, Pa., 328 A.2d 507 (1974).

Appellant next argues, citing *Commonwealth v. Collins*, 436 Pa. 114, 259 A.2d 160 (1969), that his formal statement is inadmissible because he was not informed prior to his questioning that the victim of the stabbing had died. We do not agree. When appellant was initially given his *Miranda* warnings at the police station, he was not informed that the victim had died because the police were unaware of the fact. After several preliminary questions, the interview was stopped because the police were informed of the death of the victim. Appellant was then readvised of his rights and told that the victim had died. He again waived his rights and gave the police a statement. This second warning given to appellant advised him of the death of the victim and gave him the requisite information to make an intelligent decision of whether to waive his rights. We therefore find no error in the police procedure.

Appellant next argues that he was denied due process of law because of the absence of black jurors on

his jury. Appellant did not file a challenge to the general array of the jury panel prior to trial, but only raised the issue in post-trial motions. The trial judge took this issue under advisement, and defense counsel agreed that he would accept the findings as stated in *Commonwealth v. Carroll*, 443 Pa. 518, 278 A.2d 898 (1971), pertaining to the total population of Erie County and the percentage of blacks in the county. The trial judge found that since the jury selection process was the same in Erie County as it was in *Carroll, supra,* and since that system was sustained when it came under constitutional challenge in *Carroll*, it was still valid. We must agree with that determination. Appellant failed to prove any systematic exclusion of blacks on Erie County juries, and only suggested by speculation that evidence and testimony taken on the issue in another Erie County case would prove his contention. Appellant had the opportunity prior to trial to establish his contention and create a record to support his claim. Since he failed to do so, we must dismiss his contention.

Appellant next argues that the trial judge erred in his charge relating to self-defense, and in his explanation of the differences between voluntary manslaughter and murder in the second degree. An examination of the trial judge's charge clearly establishes that both points were fully and properly covered by the trial judge.

Judgment of sentence affirmed.

ROBERTS, J., filed a concurring opinion, in which MANDERINO, J., joins.

ROBERTS, Justice (concurring).

I concur in the result reached by the majority and desire to set forth by reasons for affirming the judgment of sentence.

Appellant Norris Jones was convicted by a jury of second degree murder and sentenced to 5 to 12 years im-

prisonment.   Post-trial motions were denied and this appeal ensued.

On October 8, 1971, appellant, age 19, and a companion were involved in a fist fight with Craig Stancko, age 16. The fight ended when Craig Stancko retreated to his home.   There, he told his older brother Dennis, age 22, what had transpired.   Dennis, accompanied by Craig and a friend, immediately set out for Jones's home, apparently with the intention of avenging the beating Craig sustained.

In an effort to entice Jones out of his house, Dennis pounded on Jones's door.   When Jones opened the door, a fight began and Jones was knocked to the ground.   Jones regained his feet, drew a knife and stabbed Dennis Stancko.

Stancko ran seven blocks to his home.   He was rushed to a hospital where he died.

Within a half hour after the melee, the police arrived at Jones's home.   After asking appellant whether he was "involved in this incident" and receiving an affirmative reply, the police arrested Jones and a friend, ushered them into a police car and informed the suspects of their constitutional rights.[1]   While en route to the police station, it occurred to the police officers that they had forgotten to search appellant.   One of the officers therefore asked appellant if he had anything in his pockets.   Appellant produced a pocket knife and told the police "this is the knife that was used."

Jones was taken to police headquarters, reinformed of his constitutional rights, and told that he would be questioned about the stabbing.   When the interrogators

1.   See *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
   Appellant contests the suppression court's conclusion that he was informed of his constitutional rights while in the police car. However, the court's findings are supported by the record and may not be disturbed.

learned of Dennis's death, they relayed this information to Jones, and again repeated the *Miranda* warnings. Sometime after he was told of Stancko's death, Jones dictated to the police a statement in which he admitted his involvement in the killing.

At a pre-trial hearing, appellant moved for the suppression of the statements made in the police car and in the police station. This motion was denied and the statements were admitted at trial.

In this appeal, Jones argues that it was error to admit the statements. He asserts that because he was not told either of Stancko's death or of the charges lodged against him, his waiver of his constitutional rights was not "knowing and intelligent," and was invalid. He therefore claims the statements were admitted in violation of article I, section 9 of the Pennsylvania Constitution [2] and the fifth amendment of the United States Constitution.[3] I cannot agree.

The theory that a suspect's waiver of his *Miranda* rights is "knowing and intelligent" [4] only if he knows the nature of the incident under investigation was first suggested in the plurality opinion in *Commonwealth v. Collins,* 436 Pa. 114, 259 A.2d 160 (1969). Although a number of subsequent cases discussed this requirement,[5] not

2. "In all criminal prosecutions the accused . . . cannot be compelled to give evidence against himself."

3. "No person . . . shall be compelled in any criminal case to be a witness against himself."

4. "If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination . . .." *Miranda v. Arizona,* 384 U.S. 436, 475, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694 (1966).

5. See *Commonwealth v. McKinney,* 453 Pa. 10, 14, 306 A.2d 305, 307 (1973); *Commonwealth v. McIntyre,* 451 Pa. 42, 48, 301 A.2d 832, 835 (1973); *Commonwealth v. Swint,* 450 Pa. 54, 59, 296 A.2d 777, 780 (1972); *Commonwealth v. Boykin,* 450 Pa. 25, 28, 298 A. 2d 258, 260 (1972) (Opinion announcing the decision of the Court); *Commonwealth v. Jacobs,* 445 Pa. 364, 366–367, 284 A.2d

until *Commonwealth v. Richman*, 458 Pa. 167, 320 A.2d 351 (1974), did a majority of this Court articulate clearly the elements of this doctrine.[6] There we held that while "there is no need for the police to explain in detail all of the technicalities of the charges, the accused should at least know the general nature of the transaction giving rise to the charges." Id. at 175, 320 A.2d at 355.

Under our holding in *Richman*, appellant's waiver at the police station was clearly "knowing and intelligent." The suppression court found that before Jones waived his *Miranda* rights, he had been informed that he was being questioned about the Stancko stabbing. In these circumstances, the accused did "know the general nature of the transaction giving rise to the charges."

Likewise, Jones's statement in the police car that his "was the knife that was used," was made with sufficient knowledge of "the general nature of the transaction" to constitute a "knowing and intelligent" waiver.[7] Admittedly, the police never explicitly told appellant that they were arresting him for the stabbing. Nevertheless, when the police arrived at Jones's home, they asked him, "were you involved in this incident?"[8] Jones answered that he was. Because the arrest followed so closely the

108, 109 (1971); *Commonwealth v. Cooper*, 444 Pa. 122, 124, 297 A.2d 108, 109 (1971).

6. While it is true *Richman* dealt with waiver of the right to counsel at line-ups, the opinion clearly states that the same standard is to be applied to *Miranda* waivers as is used in waivers of the right of counsel at line-ups.

7. I cannot subscribe to the majority's view that this statement of Jones was volunteered. Compare *Commonwealth v. Powell*, 459 Pa. 253, 328 A.2d 507 (1974). In my judgment the officer's question was "calculated to, expected to, or likely to elicit an incriminating response." *Commonwealth v. Yount*, 455 Pa. 303, 309, 314 A.2d 242, 246 (1974); see *Commonwealth v. Davis*, 460 Pa. ——, 331 A.2d 406 (1975). Therefore, Jones's response cannot be considered truly volunteered.

8. When the officer asked this question Jones was not in custody. Therefore, the officer need not have informed Jones of his constitutional rights before posing this question.

stabbing, an event in which appellant never denied participating, there could be no ambiguity as to what incident the police meant. Moreover, during the trip to the police station, appellant told his friend, "We won't be there long. All they have to do is find out whose property it was on when it happened." While this statement is not unambiguous, it does suggest that appellant understood he was to be questioned about the event that had just occurred at his home.

On this record, the Commonwealth adequately established that appellant had a sufficient knowledge of "the general nature of the transaction giving rise to the charges" to fathom what was at stake when he waived his rights. Therefore, I agree with the majority that Jones's waiver was "knowing and intelligent."

Appellant asserts that the court incorrectly charged the jury on self-defense, and that two of his points for charge were improperly rejected. He also claims that when the jury requested additional instructions, the court erred in failing to give another requested point for charge. However, appellant made no specific objections to the points now assigned as error. Pursuant to Pennsylvania Rule of Criminal Procedure 1119(b),[9] failure to make specific objections to the courts charge bars appellant from asserting the alleged errors on appeal.

Finally appellant alleges that the absence of blacks on the general jury panel from which appellant's petit jury was chosen rendered his conviction invalid. Appellant admits that he failed to make a timely objection to the array. Nevertheless he claims that this failure should be

9. "No portions of the charge nor omissions therefrom may be assigned as error unless specific objections are made thereto before the jury retires to deliberate."
   See *Commonwealth v. Johnson*, 457 Pa. 554, 562 n. 8, 327 A.2d 632, 637 n. 8 (1974); *Commonwealth v. Martinolich*, 456 Pa. 136, 160 n. 15, 318 A.2d 680, 693 n. 15 cert. denied, 419 U.S. 1065, 95 S.Ct. 651 (1974); *Commonwealth v. Watlington*, 452 Pa. 524, 306 A.2d 892 (1973).

excused because (1) he had no opportunity to observe the racial composition of the general panel and (2) because "a constitutional error of this magnitude is not waived by the failure to make a timely objection." Appellant's claim that he was unable to determine the racial composition of the general jury panel is clearly frivolous. His assertion that we should take cognizance of "a constitutional error of this magnitude" is nothing more than a claim of "basic and fundamental error." In *Commonwealth v. Clair*, —— Pa. ——, 326 A.2d 272 (1974), we held "no longer will allegations of basic and fundamental error serve to enable parties in criminal matters to seek reversal on alleged errors not properly raised below." Id. at ——, 326 A.2d at 274. Therefore, that claim was waived.[10]

In my view, appellant advanced no ground for overruling his conviction.

MANDERINO, J., joins in this concurring opinion.

[10]. *Commonwealth v. Blair*, 460 Pa. 31, 36 n. 3, 331 A.2d 213, 215 n. 3 (1975). *Commonwealth v. Agie*, 449 Pa. 187, 296 A.2d 741 (1972).